UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DANIEL THOMPSON, | Case No. 17-10490 |
| Plaintiff, | Denise Page Hood |
| v. | Chief United States District Judge |
| MICHIGAN DEPARTMENT OF CORRECTIONS, *et al*, | Stephanie Dawkins Davis United States Magistrate Judge |
| Defendants. | |
| _____/ | |

**REPORT AND RECOMMENDATION**
**MOTION TO DISMISS (Dkt. 36)**

## I.  PROCEDURAL HISTORY

Plaintiff, a prisoner in the custody of the Michigan Department of Corrections, filed this prisoner civil rights action on February 16, 2017. (Dkt. 1). Chief District Judge Denise Page Hood referred this matter to the undersigned for all pretrial proceedings. (Dkt. 27). Defendants Mary Grenier and Roslyn Jindal, employees of Corizon, Inc., filed a motion to dismiss the complaint on October 31, 2017. (Dkt. 36). Plaintiff filed his response on December 19, 2017. (Dkt. 39). On January 2, 2017, defendants filed their reply. (Dkt. 40). This matter is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motion to dismiss be **GRANTED**.

## II. FACTUAL BACKGROUND

At the time of the events giving rise to this complaint, plaintiff was housed at Gus Harrison Correctional Facility (ARF) located in Adrian, Michigan. (Dkt. 1, p. 2, ¶ 4). In his complaint, plaintiff says that he has a disability and was issued several special medical accommodations while in MDOC custody, including a "no steps" medical accommodation. (Dkt. 1, pp. 3-4, ¶ 16). Plaintiff was assigned to a cell in Housing Unit 3 located in the "D Wing" of ARF, which is the dedicated section for disabled prisoners. (Dkt. 1, p. 4, ¶ 17). This unit was outfitted with a wheelchair lift for transporting prisoners from the ground level to the lower level. *Id.* at ¶ 18. Plaintiff had to use the stairs on the D Wing because the wheelchair lift was inoperable from August 13, 2016 until November 16, 2016. *Id.* at ¶¶ 19-20. On September 14, 2016, plaintiff fell and injured his left elbow and back while using the stairs. *Id.* at ¶ 19. Plaintiff was seen by a nurse on September 15, 2016, issued an ACE bandage and instructed on how to apply ice to his elbow. *Id.* at ¶ 21.

Since falling down the stairs as a result of the wheelchair lift being inoperable, plaintiff filed a series of grievances. (Dkt. 1, p. 5, ¶ 28). After he filed his grievances, plaintiff alleges that defendants Grenier and Jindal revoked his "no steps" and "ground floor" special medical accommodations without any prior notice. (Dkt. 1, pp. 5-6, ¶ 29). Plaintiff says his special accommodations had no

expiration date. (Dkt. 1, p. 6, ¶ 30). Plaintiff alleges that his overall health and ability to ambulate has deteriorated over the last couple of years and especially since his fall in September 2016 and a serious assault that took place in December 2016. (Dkt. 1, p. 6, ¶ 31).

Count III of the Complaint sets forth the claims against defendants Grenier and Jindal. (Dkt. 1, p. 9, ¶¶ 46-50). Plaintiff alleges deliberate indifference, retaliation, and a violation of the Americans with Disabilities Act (ADA). *Id*. More specifically, plaintiff says that defendants Grenier and Jindal knew or should have known that their revocation of his "no steps" and "ground floor" medical accommodation constituted a "lack of care…that [could] injure[] or significantly impair[] [his] health." *Id.* at ¶ 47 (quoting P.D. 03.03.130(K)(3)). Plaintiff further alleges that they knew or should have known that revoking his medical accommodations because of his previously-filed grievances constituted deliberate indifference to his serious medical needs and retaliation. *Id*. at ¶ 48. Similarly, plaintiff alleges that defendants knew or should have known that revoking his medical accommodations violated the ADA. *Id*. at 49.

## III.   ANALYSIS AND CONCLUSION

### A.   Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim

showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A plaintiff is also obliged "to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Association of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555 (citations and internal quotation marks omitted)). And, while a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (quoting *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted)); *see also League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (the factual allegations in a complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief.").

The Sixth Circuit recognized that in *Erickson v. Pardus*, 551 U.S. 89 (2007), "a case decided just two weeks after *Twombly*, the Supreme Court clarified *Twombly* by holding that a prisoner bringing a § 1983 claim against his captor is

4

not required to state [s]pecific facts in their complaint; and *Twombly* itself suggests that its holding may be limited to cases likely to produce sprawling, costly, and hugely time-consuming litigation." *U.S. v. Ford Motor Co.*, 532 F.3d 496 (6th Cir. 2008) (citations and internal quotation marks omitted). The Sixth Circuit applied a more stringent pleading standard in *U.S. v. Ford* because a fraud claim was involved, which requires the application of the heightened pleading standard set forth in Rule 9(b), rather than the more liberal pleading standard found in Rule 8(a)(2). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citation omitted). Thus, when applying *Twombly*, except as to a claim of fraud, the Court must still read plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519 (1972), and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Erickson*, 551 U.S. at 93-94 (The Court of Appeals improperly departed "from the liberal pleading standards set forth by Rule 8(a)(2)" and failed to liberally construe" the *pro se* complaint at issue.).

    B.    <u>ADA</u>

As argued by defendants, plaintiff cannot maintain an ADA claim against the defendants in their individual capacities. While it is recognized that the ADA applies to state prisoners, *McKinley v. Bowlen*, 2001 WL 493394, at *1 (6th Cir.

May 1, 2001), it is well settled that there is no individual liability under the ADA, as individual defendants are not liable for damages for an alleged violation of the ADA. *See Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009) ("Title II of the ADA does not [ ] provide for suit against a public official in his individual capacity"); *Kaufman v. Corizon Health, Inc.*, 2013 WL 1289313, at *15 (E.D. Mich. Feb. 22, 2013) (granting summary judgment to defendants because there is no individual liability under the ADA). Thus, plaintiff's ADA claims against Grenier and Jindal fail as a matter of law.

Notably, plaintiff also brought suit against Grenier and Jindal in their official capacities. (Dkt. 1, p. 9, ¶ 51). A suit against these defendants in their official capacities under § 1983 is a suit alleging that an official policy or custom of the corporation (here, Corizon) caused an alleged deprivation of a federal right. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 817-18 (6th Cir. 1996); *Starcher v. Corr. Med. Sys., Inc.*, 7 Fed. Appx. 459, 465 (6th Cir. 2001). The defendants do not make mention of plaintiff's official capacity claim against them under the ADA. However, their employer, Corizon is not a public entity subject suit under the ADA even if it contracts with a public entity such as the MDOC to provide a service. *Larson v. Michigan Dep't of Corr.*, 2018 WL 2717493, at *3 (E.D. Mich. June 5, 2018) (Hood, J.) (citing *Matthews v. Pennsylvania Dep't of Corr.*, 613 Fed. Appx. 163, 169-70 (3d Cir. 2015)). Thus, to the extent that plaintiff's complaint suggests

an official capacity ADA claim, it too fails as a matter of law and must be dismissed.

    C.    <u>Retaliation</u>

A prisoner's claim that prison officials have retaliated against him for engaging in protected conduct is grounded in the First Amendment. *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999). To establish a *prima facie* case of retaliation within the context of § 1983, a plaintiff must prove that: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the defendant's conduct was substantially motivated at least in part by retaliation for the plaintiff's protected speech and conduct. *Id*. at 394-99. In addition to proving a retaliatory motive, the plaintiff must establish that the alleged discriminatory action was punitive in nature by showing other than *de minimis* harm resulting from it. *See Ingraham v. Wright*, 430 U.S. 651, 674 (1977); *Thaddeus-X*, 175 F.3d at 396. Plaintiff has the burden of proof on all three elements. *Murray v. Unknown Evert*, 84 Fed. Appx. 553, 556 (6th Cir. 2003).

Defendants argue that plaintiff fails to allege any facts that would explain why he believes Dr. Grenier or PA Jindal would have any knowledge of his grievances pertaining to the wheelchair lift being inoperable. They maintain, therefore, that though plaintiff may have engaged in protected activity through

7

filing grievances against individuals other than Dr. Grenier and PA Jindal, and though he may claim that the cancellation of his special medical accommodations was an "adverse action," he has not alleged sufficient facts to show a causal connection between these two events. Thus, defendants argue that plaintiff has failed to state a claim.

Although *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, a court's "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *Botello v. Tenn. Dep't of Corr.*, 2018 WL 3586315 (M.D. Tenn. July 26, 2018) (quoting *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted); *see also Johnson v. Matauszak*, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Young Bok Song v. Gipson*, 423 Fed. Appx. 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it,

that responsibility does not encompass advising litigants as to what legal theories they should pursue."). Here, defendants correctly point out that plaintiff's complaint does not contain any allegations suggesting that they were aware of plaintiff's grievances or any causal nexus between those grievances and their actions in cancelling his special medical accommodation. In his response, plaintiff argues that his medical accommodation was cancelled without cause and that this was connected to his filing of grievances and the course of events surrounding the inoperable wheelchair lift. Again, however, plaintiff does not explain how his complaint alleges that these defendants were aware of the grievances filed (his protected activity) and cancelled his medical accommodation because of those grievances. Thus, plaintiff's complaint has failed to state a claim for retaliation. *See Anthony v. Ranger*, 2010 WL 1268031, \*11 (E.D. Mich. Mar. 30, 2010) (Hood, J.) (A liberal review of the complaint revealed that it failed to allege plausible facts to support a retaliation claim where the plaintiff failed to show a causal connection that the misconduct charge was in retaliation to the lawsuits the plaintiff had filed against prison officials.).

    D.    <u>Deliberate Indifference</u>

To sustain an Eighth Amendment claim of "deliberate indifference to serious medical needs," a prisoner must satisfy two criteria. First, he must demonstrate the existence of a sufficiently serious medical need. *Farmer v. Brennan*, 411 U.S. 325,

834 (1994). A medical need is "serious" if it requires attention in order to adhere to "contemporary standards of decency." *Hudson v. McMillan*, 503 U.S. 1, 9 (1992). The seriousness of the medical need can be established "if it has been diagnosed by a physician that has mandated treatment or it is so obvious that even a lay person would easily recognize the need for medical treatment. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004). Second, he must establish that defendants were "deliberately indifferent to those needs." *Id*. "Deliberate indifference" exists when "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Id*. In other words, this criteria is satisfied when a prison official acts with criminal recklessness, i.e., when he or she "consciously disregard[s] a substantial risk of serious harm." *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994) (quotation omitted)

      Defendants argue that although plaintiff alleges that he was 64 years old; that his health is "frail"; and that he is disabled, he does not explain what his disability is. They also argue that plaintiff fails to allege why he needed "'no steps' and 'ground floor' special medical accommodations" or why the alleged cancellation of these accommodations was deliberately indifferent. Thus,

10

according to defendants, plaintiff has failed to allege both the objective component and the subjective component of his deliberate indifference claim, and the Court should dismiss this claim. Additionally, defendants argue that plaintiff's complaint amounts to a disagreement with his providers' medical judgment, which does not give rise to a constitutional violation. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.").

In response, plaintiff says that he signed a medical release authorization for defendants' counsel and thus, his medical information was available to defendants well before they filed their motion to dismiss. Thus, according to plaintiff, they could have figured out what his disability was from his medical records. Plaintiff also suggests that an unknown employee questioned his current medical need under Policy Directive 04.06.160(M), which permits any employee who "questions the current medical need" for an accommodation to "[r]eport that concern through the change of command to the medical practitioner." (Dkt. 39, Ex. F). Plaintiff says that there was no examination of plaintiff or written notice of the cancellation as required by P.D. 04.06.160(K). *Id*. Accordingly, plaintiff contends that no

11

matter how the cancellation of his medical accommodation came about, defendants' actions were deliberately indifferent.

Defendants are correct that plaintiff does not identify a diagnosis in relation to his claim of a serious medical need. And his description of symptoms is cast in fairly general terms, complicating the evaluation of whether his allegations suffice to establish a serious medical need at the time his accommodations were revoked. Be that as it may, under the circumstances of this case, the undersigned need not decide if the plaintiff's complaint sufficiently identifies a serious medical need in satisfaction of the objective prong of the deliberate indifference test. This is so because even were the Court to find that plaintiff did satisfy the objective component, the complaint does not provide sufficient facts to suggest that defendants Grenier and Jindal consciously disregarded plaintiff's needs.

The present circumstances are similar to those before the court in *Mayes v. Corizon Health Inc.*, 2013 WL 119683, at *4 (E.D. Mich. Jan. 9, 2013) (Hood, J.) in which the court observed that the plaintiff's "statement of facts does not allege any conduct that could be construed as demonstrating deliberate indifference to his medical needs. He does not allege that the medical staff 'consciously disregard[ed] a substantial risk of serious harm.'" (Quoting *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994)). Plaintiff's contention that it does not matter how the revocation of his special medical accommodations came about is not supported in the law.

Rather, he must allege facts that show these particular defendants acted with conscious disregard of his serious medical needs – that is that there were facts from which they reasonably could have drawn an inference of a substantial risk of harm; that they, in fact, drew the inference; and that they then disregarded the risk. *Farmer*, 511 U.S. at 837. To the extent that the complaint ascribes any factual knowledge to Grenier and Jindal, it is knowledge of plaintiff's prior accommodations for "no steps" and "ground floor."[1] And the existence of even that knowledge is gleaned solely from plaintiff's allegation that the defendants revoked the accommodations. The mere fact that plaintiff previously had such an accommodation does not necessarily raise an inference of a substantial risk of harm; and even if such an inference could have been made, plaintiff alleges no facts at all to suggest that defendants, in fact made it. As in *Mayes*, the factual allegations in the complaint, at most, support only an inference of negligence, which is insufficient to state a claim of deliberate indifference. *Estelle*, 429 U.S. at 106. Thus, plaintiff's deliberate indifference claims fails to pass muster under the *Iqbal/Twombly* standard and should be dismissed.

---

[1] And, nothing in the complaint suggests that Jindal or Grenier were involved in his care after he was assaulted in December 2016 or that plaintiff is alleging any claims against them relating to the assault or his injuries sustained in the assault.

13

E.   Official Capacity Claims

As set forth above, a suit against these defendants in their official capacities under § 1983 is a suit alleging that an official policy or custom of the corporation (here, Corizon) caused an alleged deprivation of a federal right. *Street v. Corr. Corp. of Am.*, 102 F.3d at 817-18; *Starcher v. Corr. Med. Sys., Inc.*, 7 Fed. Appx. at 465. While defendants do not mention plaintiff's official capacity claims in their motion to dismiss, nothing in plaintiff's complaint suggests he is making a policy-based claim against Corizon associated with his constitutional claims. Thus, the undersigned also suggests dismissing plaintiff's official capacity claims against Corizon.

F.   Exhaustion of Administrative Remedies

As set forth above, the undersigned recommends that plaintiff's claims under the ADA, for First Amendment retaliation, and for deliberate indifference under the Eighth Amendment all be dismissed for failure to state a claim under Rule 12(b)(6). Thus, it is not necessary for the court to address defendants' affirmative defense of exhaustion.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendants' motion to dismiss be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and E.D. Mich. Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2); E.D. Mich. Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 10, 2018              s/Stephanie Dawkins Davis
                                                  Stephanie Dawkins Davis
                                                  United States Magistrate Judge

## CERTIFICATE OF SERVICE

      I certify that on August 10, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and I have mailed by U.S. Postal Service to the following non-ECF participant: Daniel Thompson #533512, Saginaw Correctional Facility, 9625 Pierce Road, Freeland, MI 48623.

                                                    s/Tammy Hallwood
                                                    Case Manager
                                                    (810) 341-7887
                                                    tammy_hallwood@mied.uscourts.gov